**UNITED STATES DISTRICT COURT**      **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:09-CR-4(1) |
| | § | |
| MICHAEL ANTHONY AVILA | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant Michael Anthony Avila's ("Avila") *pro se* Motion for Compassionate Release and Appointment of Counsel (#192), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." The Government filed a response in opposition (#195). Avila did not file a Reply. After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    <u>Background</u>

On January 7, 2009, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a three-count Indictment against Avila, charging him in Count 1 with Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine HCl in violation of 21 U.S.C. § 846, in Count 2 with Possession with Intent to Distribute 5 Kilograms or More of Cocaine HCl in violation of 21 U.S.C. § 841(a)(1), and in Count 3 with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1). On November 30, 2009, Avila pleaded guilty to Count 1 of the Indictment. Avila stipulated that he was subject to a sentence enhancement for a prior conviction pursuant to 21 U.S.C. § 851. The sentence

enhancement raised the statutory minimum sentence to 20 years of imprisonment.[1]  United States District Judge Ron Clark sentenced Avila to 240 months' imprisonment, followed by a 10-year term of supervised release.  Avila did not appeal.

Avila filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on May 21, 2015, asserting his federal sentence was "illegal" because the sentence enhancement was based on a conviction that had been dismissed.  Finding that Avila's prior conviction had not actually been dismissed, the court denied the motion to vacate, set aside, or correct sentence on July 12, 2018, as lacking in merit.

On May 10, 2021, Avila filed his first Motion for Compassionate Release (#181), arguing that the threat created by the Coronavirus Disease 2019 ("COVID-19"), his rehabilitation,  and a post-conviction change in the applicable sentencing law, were extraordinary and compelling reasons for his release.  On September 27, 2021, the court denied the motion.

In his present motion for compassionate release, Avila argues that his unusually long sentence, certain changes in the law, and his rehabilitation are extraordinary and compelling reasons justifying his release.  On June 21, 2023, Avila's release/relocation plan was approved, and on May 23, 2024, he was transferred from the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City") to the Residential Reentry Center ("RRC") in Houston, Texas, where it appears Avila will remain under supervision until his projected release date of March 9, 2026.

---

[1] On April 3, 2006, Avila was convicted of possession of marijuana in the 36th Judicial District Court of San Patricio County, Texas.  Avila was sentenced to 10 years' imprisonment, with the sentence of imprisonment suspended, and he was placed on probation for 10 years.  Based on this felony conviction, Avila's sentence was enhanced pursuant to 21 U.S.C. § 851.

II.    Appointment of Counsel

Avila requests the appointment of counsel to assist him in filing his motion for compassionate release.  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. 232, 245-46 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Garza*, No. 24-40425, 2025 WL 429978, at *1 (5th Cir. Feb. 7, 2025); *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Avila is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Avila provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event,

4

he has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Avila is 42 years old, has a GED, and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Avila's motion for appointment of counsel is denied.

III.    Compassionate Release

A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

5

of imprisonment), after considering the factors set forth in section 3553(a)[2] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other*

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

grounds by *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id.* § 1B1.13(b). These categories are:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the family circumstances of the defendant;

(4) whether the defendant was a victim of abuse while in custody;

(5) other reasons similar in gravity to those previously described; and

(6) an unusually long sentence.

*Id.* § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)    the defendant must have exhausted his administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden

received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *Id.*

Here, Avila appears to have exhausted his administrative remedies.  On November 15, 2023, Avila submitted a request for compassionate release to C. Harrison, the warden of the facility where Avila was housed at the time he filed his motion.  In his request, he argued his unusually long sentence, a change in the law, and his rehabilitation were extraordinary and compelling grounds justifying his release.  After the passage of 30 days, Warden C. Harrison had not responded to the request.  Thus, Avila exhausted his administrative remedies with respect to all of his pending claims.  Avila met the statutory requirements for exhaustion, as he filed his motion for compassionate release well past the 30-day waiting period.  *See Garrett*, 15 F.4th at 338 ("[A] prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court.").  Nevertheless, while Avila may have complied with the exhaustion requirement before filing his motion for compassionate

release, nothing in the motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

    C.    <u>Unusually Long Sentence/Changes in the Law</u>

Avila contends that he should be granted a sentence reduction and released from custody because he received an unusually long sentence. He maintains that if he were sentenced today, he would receive a lesser sentence under current law, creating unwarranted sentencing disparities.

Section 1B1.13(b)(6) provides:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). A limitation on considering changes in the law is contained in 1B1.13(c) of the Sentencing Guidelines, which provides:

> LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

Specifically, Avila states that if he were sentenced today, he would be subject to a maximum sentence of 151 months' imprisonment instead of 240 months:

The enactment of the First Step Act; section 401, amendment 782 now qualifies me for a reduction in sentence. F.S.A. section 401 now disqualifies my 851 enhancement because I never served over a year on my prior conviction, see PSR. Amendment 782 reduces my base offense by 2 levels leaving my level score at 34 minus 2 points for downward variance for a level of 121-151 months which should now become my guideline range.

At the time Avila's sentence was imposed, the statutory minimum sentence for his offense of conviction was 20 years' imprisonment pursuant to an enhancement under 21 U.S.C. § 851. Section 401 of the First Step Act reduces and restricts enhanced mandatory minimum sentences based on prior drug convictions, which are commonly referred to as "851 enhancements." Pub. L. 115-391, § 401, 132 Stat. 5194, 5220-21 (codified as amended at 21 U.S.C. §§ 802, 841, 960); *see United States v. Declouet*, No. CR 07-198, 2020 WL 708137, at *2 (E.D. La. Feb. 12, 2020). Section 401, states in pertinent part:

(A)(2)(i) by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

(ii) by striking "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release" and inserting the following: "after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years"; and

*** 

(c) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21.

Section 401 not only reduced the mandatory minimum penalties, but also changed the conditions under which they apply under 21 U.S.C. §§ 841(b)(1)(A), (B), and 960(b)(1), (2).[3] Prior to the First Step Act, enhanced mandatory minimum sentences were triggered upon the showing of a prior conviction for a "felony drug offense." Now, the defendant's prior conviction must meet the new definition of "serious drug felony" or "serious violent felony."[4] *See* Pub. L. 115-391, § 401, 132 Stat. 5194, 5220-21.

The court addressed this claim in Avila's first motion for compassionate release. The Government then, too, conceded that if sentenced today, Avila would not be subject to a mandatory 20-year sentence because Avila's prior drug offense included in the Government's § 851 notice does not qualify as a newly defined "serious drug felony" or "serious violent felony."

To the extent Avila seeks a reduction under Section 401 of the First Step Act, he is foreclosed from obtaining relief. Section 401 of the First Step Act does not apply retroactively. *See United States v. Short*, No. 22-30812, 2023 WL 3391476, at *1 (5th Cir. May 11, 2023)

---

[3] Sections 841(b)(1)(C) and (D) were not amended.

[4] "Serious drug felony" and "Serious violent felony" are defined in 21 U.S.C. § 802(57) and (58), respectively. A "serious drug felony" means an offense prohibited by 18 U.S.C. § 924(e)(2)(A) for which the defendant served a term of imprisonment of more than 12 months and was released from any term of imprisonment within 15 years of the instant offense. Section 924(e)(2)(A) defines "serious drug offense" as an offense under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), Chapter 705 of Title 46 (Maritime Law Enforcement) or under state law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment is 10 years or more. "Serious violent felony" means an offense for which the defendant served a term of imprisonment of more than 12 months that is either a violation of 18 U.S.C. § 3559(c)(2) or 18 U.S.C. § 113 (assaults within maritime or territorial jurisdiction). Section 3559(c)(2)(F) defines "serious violent felony" as enumerated offenses including murder, certain sex offenses, kidnapping, extortion, arson, and certain firearms offenses, among others, or as any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense" and is punishable by a maximum term of imprisonment of 10 years or more.

(citing *United States v. McClaren*, 13 F.4th 386, 417 (5th Cir. 2021) (holding that § 401 of the First Step Act does not apply retroactively)); *United States v. Staggers*, 961 F.3d 745, 753 (5th Cir. 2020) (holding that § 401 of the First Step Act does not apply retroactively); *United States v. Carabali-Diaz*, 800 F. App'x 299 (5th Cir. 2020) (holding that "Sections 401 and 403 of the First Step Act do not apply to [Defendant] because he was sentenced before the statute's enactment on December 21, 2018."); *accord United States v. Strother*, 854 F. App'x 627, 628 (5th Cir. 2021); *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021) ("The First Step Act explicitly says that the amendment to which [the defendant] refers—§ 401—applies 'only where a sentence for the offense has not been imposed as of [December 21, 2018].'" (quoting *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019)); *United States v. Pubien*, 805 F. App'x 727, 730 (11th Cir. 2020) ("The First Step Act did not make § 401's amendments retroactively applicable to defendants sentenced prior to its enactment.").   In the case at bar, Avila was sentenced on December 8, 2009, which was prior to the enactment of the First Step Act on December 21, 2018.[5]

Finding that non-retroactive changes in the law do not constitute extraordinary and compelling circumstances warranting Avila's early release, the court denied Avila's first motion for compassionate release.  Avila's circumstances have not changed such that a reconsideration of this claim is justified.  In fact, the Guidelines and case precedent from the United States Court

---

[5] Amendment 782 offers Avila no relief here, either.   "This is because 'a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2)' if 'the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.*, a statutory mandatory minimum term of imprisonment)."  *United States v. Stewart*, 964 F.3d 433, 436 (quoting U.S.S.G. § 1B1.10, cmt. 1).

of Appeals for the Fifth Circuit further solidify that non-retroactive changes in the law do not, by themselves, warrant compassionate release.

In order to meet the requirements of the Unusually Long Sentences provision of U.S.S.G. § 1B1.13(b)(6), Avila must satisfy three requirements.  First, the defendant must be serving an unusually long sentence.  U.S.S.G. § 1B1.13(b)(6).  The sentence Avila received, 240 months, could be viewed as unusually long, but it was imposed pursuant to the mandatory statutory minimum requirement at the time.  Second, the defendant must have served at least ten years of that sentence.  *Id*.  Avila has fulfilled this requirement.  Third, there must have been a change in the law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  *Id*.  This section explicitly excludes the consideration of non-retroactive changes "to the Guidelines Manual."  *Id*.  In the Fifth Circuit, controlling precedent precludes the court's consideration of non-retroactive changes in *any* law, which accounts for most of the disparities in this case.  *See Austin*, 125 F.4th at 692 ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1).");  *Escajeda*, 58 F.4th at 187 (holding that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence").

In a 2023 decision, the Fifth Circuit rejected a defendant's argument that he should receive a sentence reduction because the First Step Act reduced the statutory minimums applicable to his offenses.  *See United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam).  The court pointed out that Congress did not make those reductions retroactive and went on to declare that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither

14

extraordinary nor compelling." *Id.* The court noted that "in federal sentencing the *ordinary* practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). The court elaborated that this ordinary practice reflects a "presumption against retroactive legislation" that is "deeply rooted in our jurisprudence" and that "embodies a legal doctrine centuries older than our Republic." *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). The *McMaryion* court held: "We may not usurp the legislative prerogative and use 18 U.S.C. § 3582(c)(1) to create retroactivity that Congress did not." *Id.*

On July 15, 2024, however, the Fifth Circuit took the opposite approach in *United States v. Jean* when it upheld the release of a defendant for whom the district court found compassionate release to be warranted because his sentence, if imposed at the time of review, would have been nearly a decade shorter and he had exhibited extraordinary rehabilitation. 108 F.4th at 277. The defendant's sentence would have been shorter because he no longer would have been classified as a career offender under U.S.S.G. § 4B1.1, which, among other things, would have affected his criminal history category. *Id.* at 279-80. Pointing to the Commission's amendments to the Guidelines that became effective on November 1, 2023, specifically U.S.S.G. § 1B1.13(b)(6), the court held that "after November 1, 2023, a non-retroactive change in the law may be considered in determining whether the defendant presents, as a whole, extraordinary and compelling reasons if: (1) the defendant has served at least ten years of the term of imprisonment; (2) the change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (3) the defendant's individualized circumstances support compassionate release." *Jean*, 108 F.4th at 289-90. The *Jean* court explicitly held:

15

It is within a district court's sound discretion to hold that non-retroactive changes in the law, in conjunction with other factors such as extraordinary rehabilitation, sufficiently support a motion for compassionate release. To be clear, it is also within a district court's sound discretion to hold, after fulsome review, that the same *do not* warrant compassionate release. For this court to hold otherwise would be to limit the discretion of the district courts, contrary to Supreme Court precedent and Congressional intent.

108 F.4th at 290.

In *Austin*, a different panel of the Fifth Circuit reached a contrary conclusion. In January 2023, the defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1), arguing that a non-retroactive change in the law was an extraordinary and compelling reason to reduce his sentence. *Austin*, 125 F.4th at 690-91. At the time Austin pleaded guilty to conspiracy to distribute cocaine hydrochloride and cocaine base in violation of 21 U.S.C. § 846, and at the time of his sentencing in 2013, the mandatory minimum sentence for that offense was 20 years of imprisonment, as here. *See* 21 U.S.C. § 841(b)(1)(A) (2010). The district court applied the mandatory minimum and sentenced Austin to 20 years of imprisonment. In 2018, Congress reduced the mandatory minimum sentence for that offense to 15 years of imprisonment. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(2)(A), 132 Stat. 5194, 5220 (codified as amended at 21 U.S.C. § 841(b)(1)(A)). Congress, however, explicitly made this change non-retroactive as noted above. *See id*. § 401(c), 132 Stat. at 5221. Austin argued in his motion for compassionate release that despite Congress's decision to make § 401 non-retroactive, it should nonetheless apply retroactively to him. *Austin*, 125 F.4th at 691. He contended that the non-retroactive change set forth in § 401 was a "compelling and extraordinary" reason to reduce his sentence, because "if he were sentenced today, he would get the benefit of the First Step Act." *Id*.

16

The Fifth Circuit rejected Austin's argument, holding that it was "squarely foreclosed under our rule of orderliness: (A) we are bound by *United States v. Escajeda*, and (B) our later decision in *United States v. Jean* was wrong to say otherwise." *Id.* The court observed that Austin's case was "controlled by the binding holding in *United States v. Escajeda*." *Id.* Citing the definitions of "extraordinary" and "compelling" set forth in *Escajeda*, the *Austin* court concluded that prisoners have extraordinary and compelling reasons for relief "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* (quoting *Escajeda*, 58 F.4th at 186). The court reasoned:

> A non-retroactive change in the law affects every prisoner previously sentenced under that provision in the exact same way. And by its terms, a non-retroactive change in the law has zero effect on defendants already in prison. Thus, a non-retroactive change in law is, by definition, neither an "extraordinarily severe exigency" nor "unique to the life of the prisoner." *Ibid.* Under a straightforward reading of *Escajeda*, a non-retroactive change in the law is not an extraordinary or compelling reason to reduce a prisoner's sentence.

*Id.* at 692. The panel noted that the Fifth Circuit had repeatedly followed *Escajeda* and reaffirmed this result. *See United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at *2 (5th Cir. Feb. 14, 2024) (per curiam); *United States v. Elam*, No. 22-40373, 2023 WL 6518115, at *1-2 (5th Cir. Oct . 5, 2023) (per curiam); *McMaryion*, 2023 WL 4118015, at *2.

The *Austin* court recognized that § 1B1.13(b)(6) of the Guidelines, the provision at issue here, says that a non-retroactive change in the law may be considered in determining whether the defendant presents an extraordinary and compelling reason for a sentence reduction. 125 F.4th at 692. The court, however, stated:

> But that changes nothing. Just like any agency action, the Guidelines "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 757 . . . (1997); *accord Stinson v. United States*, 508 U.S. 36, 38, 44-45 . . . (1993). Thus, the Sentencing Commission cannot make retroactive what Congress

17

made non-retroactive. *See, e.g., McMaryion*, 2023 WL 4118015, at *2. And it certainly cannot do so through an interpretation of "extraordinary and compelling" that conflicts with the plain meaning of those terms. *See ibid.* Moreover, the Commission "does not have the authority to amend the statute we construed" in *Escajeda* and its progeny. *Neal v. United States*, 516 U.S. 284, 290 . . . (1996); *accord United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017).

*Id.*; *accord* 28 U.S.C. § 994(a) (mandating that the Commission's guidelines be "consistent with all pertinent provisions of any Federal statute"); *United States v. Bricker*, No. 24-3286, 2025 WL 1166016, at *8-11 (6th Cir. Apr. 22, 2025) (holding that "§ 1B1.13(b)(6)'s construction of 'extraordinary and compelling' . . . conflicts with other statutes (either the nonretroactive statutory amendments or 1 U.S.C. § 109), and the Commission cannot interpret a statute in a way that contradicts or negates other statutes." (citing 28 U.S.C. § 994(a))); *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025) (holding that the Commission's interpretation of extraordinary and compelling must be "consistent with all pertinent provisions of any Federal statute" and to the extent § 1B1.13(b)(6) conflicts with another statute, the guideline is invalid (quoting 28 U.S.C. § 994(a)); *United States v. Rutherford*, 120 F.4th 360, 375-76 (3d Cir. 2024) ("Congress has granted the Commission power to promulgate only those policy statements that are 'consistent with all pertinent provisions of any Federal statute.'" (quoting 28 U.S.C. § 994(a))). The *Austin* panel proceeded to declare that *Jean* "was wrongly decided and does not control. Under our rule of orderliness, when one panel decision disregards an earlier panel decision, we are duty-bound to follow the earlier one." *Id.* at 692-93 (citing *Lucas v. Lumpkin*, 125 F.4th 639, 641 (5th Cir. 2025); *Nivelo Cardenas v. Garland*, 70 F.4th 232, 242 n.7 (5th Cir. 2023)). The *Austin* court further observed that *Jean* was distinguishable. *Id.* at 693. In *Jean*, the change in the law resulted from a new judicial interpretation of § 4B1.1 of the Guidelines, whereas in *Austin*, the change in

the law resulted from a new statute that explicitly said it was non-retroactive, the First Step Act § 401(c), 132 Stat. at 5211. *Id.*

In the case at bar, the change in the law at issue resulted from a new statute that explicitly stated it was non-retroactive—First Step Act § 401(c), 132 Stat. at 5220-21; *see Black*, 131 F.4th at 546 (holding that the First Step Act's anti-stacking amendment cannot support a prisoner's motion for compassionate release); *Rutherford*, 120 F.4th at 377-78 (holding that the First Step Act's non-retroactive changes to 18 U.S.C. § 924(c)'s mandatory minimum sentences cannot be considered in determining a prisoner's eligibility for compassionate release)... Congress has explicitly stated that the Commission's guidelines must be "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). In this case, § 1B1.13(b)(6) conflicts with Congress's non-retroactivity directive; therefore, the Commission has exceeded the scope of its explicitly delegated authority and § 1B1.13(b)(6) is invalid. *See* 28 U.S.C. § 994(a); *Bricker*, 2025 WL 1166016 at *17 (holding that § 1B1.13(b)(6) is invalid); *Black*, 131 F.4th at 546 (holding that the court must determine whether the Commission has acted within its statutory authority); *Rutherford*, 120 F.4th 360 (stating that to allow a non-retroactive change in the law to serve as an extraordinary and compelling reason for compassionate release would "sow conflict within the statute" (quoting *United States v. Andrews*, 12 F.4th 255, 261(3d Cir. 2021))). In any event, the *Austin* decision makes clear that "[a] non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582." 125 F.4th at 693.

Similarly, the Courts of Appeals for the Third, Sixth, and Seventh Circuits have held that when Congress makes a change in the law non-retroactive, such change cannot serve as an

extraordinary and compelling reason warranting compassionate release. *Bricker*, 2025 WL 1166016, at *17; *Black*, 131 F.4th at 546; *Rutherford*, 120 F.4th at 377-78.  Other district courts within the Fifth Circuit have recognized that non-retroactive changes in sentencing law cannot be used to reduce a defendant's sentence merely because, in the judge's estimation, the defendant received an unusually long sentence that now represents a gross disparity from the sentence the court would likely impose today. *See United States v. Torres*, No. H-93-210-1, 2025 WL 1654590, at *2, 5 (S.D. Tex. June 11, 2025) (declining to reduce life sentence imposed on defendant for engaging in a drug trafficking and money-laundering conspiracy based on non-retroactive changes to the law); *see also United States v. Santivanez*, No. SA-98-CR-304(2)-OLG, 2025 WL 1703429, at *4 (W.D. Tex. Apr. 29, 2025), *adopted by* 2025 WL 1700054 (W.D. Tex. June 17, 2025) (rejecting sentence reduction motion filed by a then 21-year-old participant in a conspiracy to firebomb the home of a rival gang member that resulted in the death of one of the occupants who was sentenced to life imprisonment plus an additional 30-year mandatory consecutive sentence); *United States v. Matute-Carcamo,* No. H-19-494-2, 2025 WL 1677950, at *3 (S.D. Tex. June 13, 2025) (recognizing that a "non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)"); *United States v. Guillory*, No. 2:02-CR-20062-01, 2025 WL 910518, at *3 (W.D. La. Mar. 24, 2025) ("Compassionate release claims arising from non-retroactive changes in the law are not cognizable under 18 U.S.C. § 3582(c)(1)(A) despite the addition of subsection (b)(6) to the Sentencing Commission's policy statement."); *United States v. Warren*, No. 2:21-cr-33-KS-MTP, 2025 WL 465320, at *4 (S.D. Miss. Feb. 11, 2025).

Therefore, under controlling Fifth Circuit law, the length of Avila's sentence imposed in 2009 versus the length of the sentence he might receive today cannot be considered in determining whether compassionate release or a sentence reduction is warranted under 18 U.S.C. § 3582(c)(1)(A).

D.    Rehabilitation

Avila maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, the programs he has completed, and his employment history establishes extraordinary and compelling reasons for compassionate release.  Regarding rehabilitation of the defendant, the Sentencing Guidelines recognize: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-cr, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025); *Black*, 131 F.4th at 544; *see United States v. Cordoba*, No. 24010599, 2025 WL 799354,

21

at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *see United States v. Alimehmeti*, No. 16-CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024) (recognizing that some amount of rehabilitative effort is expected of inmates and holding that completion of educational courses and doing productive work while incarcerated did not justify early release). Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). In any event, in *United States v. Comb*, the court found a similar BOP log listing a defendant's participation in rehabilitative programs to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order." No. H-13-0575-06, 2025 WL 240954, at *3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025).

Avila concedes that rehabilitation alone cannot constitute extraordinary and compelling reasons to justify compassionate release, but he implores the court to consider his efforts at rehabilitation in combination with his unusually long sentence and the § 3553 factors as justification to grant his motion. As outlined above, the court has already addressed Avila's claim

regarding his allegation of an unusually long sentence. That, alone, is sufficient to obviate any discussion of Avila's rehabilitation efforts. Nonetheless, recent developments reported by Probation warrant further assessment of Avila's record with respect to his claim of rehabilitation.

While the record reflects that Avila has taken steps toward achieving rehabilitation while incarcerated, which include obtaining his GED, completing courses centered on financial responsibility, drug education, the non-residential drug program, and enrolling in the UNICOR Federal Industries program, his record is not without incident. While incarcerated, Avila accrued approximately 16 disciplinary infractions. These incidents included being absent from assignment on July 23, 2010, possession of an unauthorized item on November 11, 2010, possession of a hazardous tool such as a phone on December 20, 2010, being insolent to facility staff on September 23, 2011, using another inmate's PAC # to make phone calls resulting in phone abuse and disrupting monitoring on September 2, 2012, possessing a hazardous tool such as a phone on December 18, 2013, the use of drugs/alcohol on October 10, 2014, continued phone abuse on April 23, 2015, possession of a non-hazardous tool on May 8, 2015, possessing a hazardous tool, such as a phone on September 27, 2016, the use of drugs/alcohol on May 14, 2017, possessing a dangerous weapon on December 12, 2017, possessing a hazardous tool on May 2, 2019, the possession of drugs/alcohol on June 11, 2019, the use of drugs/alcohol on December 13, 2019, and possessing a hazardous tool on September 12, 2020.

Furthermore, as previously noted, Avila's release/relocation plan was approved by the U.S. Probation Office for the Southern District of Texas on June 21, 2023. While Avila incurred no disciplinary infractions from September 12, 2020, through May 23, 2024, while incarcerated at FCC Yazoo City, his record while under supervision at the RRC placement is concerning.

23

Since his transition to the RRC placement, Probation reports that on February 10, 2025, Avila returned to the facility following an approved work pass with a detected odor of alcohol. Avila was directed to submit to a breathalyzer test which confirmed the presence of alcohol, which was again confirmed by a follow-up breathalyzer. As a result, Avila was issued a location monitoring device to track all daily movement until further notice. In addition, Avila's case manager reported on May 5, 2025, that Avila was involved in another disciplinary incident. The incident report states that on March 10, 2025, while attempting to conduct a security check at Avila's place of employment, it was discovered that he had quit his position with Vibrantz Technologies on March 7, 2025. Avila failed to inform his case manager or the employment specialist at the Leidel Residential Reentry Facility that he was no longer employed. Nevertheless, he continued to leave the facility from March 8, 2025, through March 10, 2025, under the guise that he was going to work. As a result of this latest disciplinary infraction, Avila was placed on location monitoring for a period of 60 days. Such recent disciplinary infractions suggest that Avila is not fully rehabilitated and counter any notion that Avila is entitled to compassionate release at this time.

E.    Section 3553 Factors

Avila finally contends that he is not a danger to the safety of any other person or to the community if released. The court previously discussed the § 3553 factors in Avila's first motion for compassionate release at length but will briefly recap them here.

Avila's offense of conviction arises out of his participation in a drug-trafficking conspiracy. On December 16, 2008, a Beaumont, Texas, police officer conducted a traffic stop on a vehicle in which Avila was a passenger. A search of the vehicle revealed six kilograms of cocaine HCl hidden within two compartments. A later search of Avila's residence revealed one kilogram of

cocaine HCl, 12.4 kilograms of marijuana, and two firearms in a child's bedroom. Officers also found 12 kilograms of cocaine HCl, $199,201.00 in United States currency, and a third firearm in the master bedroom. Avila has a previous conviction for possession of more than 6 pounds of marijuana that was found in the rear seat of a vehicle he was towing. As outlined above, Avila has an extensive disciplinary history, even while out on RRC placement. Avila also has a history of substance abuse which includes the use of alcohol, marijuana, and cocaine since he was a teenager.

The court sees no reason to revise its prior assessment. In this instance, recent reports reflect that Avila has already reverted to abusing the system while released to his RRC placement. This does not bode well for Avila's future and puts Avila at risk of revocation of his pre-release placement. Title 18 U.S.C. § 3624(g)(5) states:

> If a prisoner violates a condition of the prisoner's prerelease custody, the Director of the Bureau of Prisons may impose such additional conditions on the prisoner's prerelease custody as the Director of the Bureau of Prisons determines appropriate, or revoke the prisoner's prerelease custody and require the prisoner to serve the remainder of the term of imprisonment to which the prisoner was sentenced, or any portion thereof, in prison. If the violation is nontechnical in nature, the Director of the Bureau of Prisons shall revoke the prisoner's prerelease custody.

In view of the nature and circumstances of his offense of conviction and his prison disciplinary record, there is no reason to believe that Avila will not revert to his drug-dealing activities and drug-abusing behavior as well as his unlawful possession of firearms if released from confinement at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). Avila committed a serious offense that justified his sentence, and the circumstances he now identifies that are based primarily on non-retroactive changes in the law, do not render that

sentence unjust or inequitable. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).

IV.    Conclusion

In sum, Avila has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. The 240-month sentence of imprisonment imposed upon Avila for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture. Neither the length of his sentence nor Avila's efforts at rehabilitation merit a reduction of his sentence under these circumstances.

Accordingly, it is ORDERED that Avila's *pro se* Motion for Compassionate Release and Appointment of Counsel (#192) is DENIED.

SIGNED at Beaumont, Texas, this 3rd day of August, 2025.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

26